■ NORMAN J. ACKERMAN et al., Respondents-Appellants, v METROPOLITAN LIFE INSURANCE COMPANY, Appellant-Respondent. [611 NYS2d 538] —Order, Supreme Court, New York County (Carol H. Arber, J.), entered August 25, 1992, which denied defendant's motion to dismiss the complaint or, in the alternative, for summary judgment, but dismissed those portions of the complaint seeking damages for emotional injuries arising from the breach of contract claim and the cause of action for fraud, modified, on the law, only to the extent of dismissing the cause of action for punitive damages and granting plaintiffs leave to replead their purported causes of action for fraud and punitive damages and, as so modified, the order is otherwise affirmed, without costs.

Plaintiffs' contention that defendant is practicing a broad based fraud on New York State government employees by using a registered nurse to decide which treatments are medically required within the meaning of its Empire Plan group medical/surgical policy was not raised below and is being raised for the first time on appeal. Thus, inasmuch as plaintiffs' claim that defendant applies its medically necessary standard in an arbitrary and capricious manner is essentially one for breach of contract, their second cause of action for fraud was properly found inadequate. However, rather than an outright dismissal, plaintiffs should have been afforded leave to replead such cause.

Likewise, inasmuch as the complaint, on its face, contains

no allegation that defendant engaged in "systematic behavior" as characterized by the IAS Court, their claim for punitive damages should have been dismissed inasmuch as there is no "showing of morally reprehensible conduct directed at the general public" *(Samovar of Russia Jewelry Antique Corp. v Generali,* 102 AD2d 279, 281). Again, however, they should be afforded leave to replead such cause. Concur—Ellerin, Rubin and Tom, JJ.

Sullivan, J. P., and Kupferman, J., dissent in part in a memorandum by Sullivan, J. P., as follows: Since I believe that there is no basis for the assertion of a fraud claim or the recovery of punitive damages, I would affirm the dismissal of the fraud cause of action and modify the order appealed from to strike the claim for punitive damages, as does the majority, but without leave to replead as to either disposition.

Plaintiffs contend that the defendant insurer Metropolitan falsely represented that claims for medical services would be judged under "generally accepted medical standards." Plaintiffs argue that the "reasonable import of this phrase is that physicians would determine what was medically necessary." According to plaintiffs, Metropolitan has perpetrated a fraud because it used nurses, not doctors, to review their claims. Quite apart from the fact, noted by the majority, that this argument was never raised before the IAS Court, either factually or legally, and may not therefore be asserted for the first time on appeal *(McMillan v State of New York,* 72 NY2d 871, 872; *Brown v Weinreb,* 183 AD2d 562, 563), it is totally lacking in merit. Therefore, there is no basis for granting leave to replead.

To view these claims in their proper perspective, some analysis of the policy's key provisions is in order. The certificate of insurance for major medical expense benefits provides insurance for "Covered Medical Expenses," which, under the plan, are defined as "the Reasonable and Customary Charges for covered medical services performed or supplies prescribed by a Doctor, except as otherwise provided, due to your sickness, injury or pregnancy." The certificate expressly provides that "[t]hese services and supplies must be Medically Necessary in terms of generally accepted medical standards as determined by Metropolitan". Under the certificate's listing of exclusions, "Services or supplies which are not Medically Necessary in terms of generally accepted medical standards, as determined by Metropolitan" are expressly excluded as Covered Medical Expenses. Also under the certificate's listing of exclusions, it is stated, "The fact that a Doctor may recom-

mend that a covered person receive a surgical or medical service or be confined to a Hospital does not mean: (1) that such service or confinement will be deemed to be Medically Necessary; or (2) that benefits under This Plan will be paid for the expense of such service or confinement. Metropolitan will make a decision as to whether such service or confinement: (1) is Medically Necessary in terms of generally accepted medical standards". Thus, it is clear that Metropolitan never made any representation as to who would make the determination as to medical necessity, other than itself.

Metropolitan clearly understood the difference between a determination of medical necessity made by it and one made by specified professionals. Thus, in contrast to the foregoing provisions, the clause with respect to out-patient psychiatric services provided that upon receipt of a Metropolitan Report Form, sent to the insured patient's therapist for information as to the patient's condition, including the proposed extent of treatment, "a review is made by the Mental Health Consultants, and if, in their judgment, treatment is Medically Necessary and treatment goals appear to be well conceived, benefits will be available for payment for an approved number of visits". The policy further provides that The Mental Health Consultants "include professionals in the field of psychiatry, psychology and social work".

Thus, when the certificate provided for a determination of medical necessity by professionals, it did so in clear and unmistakable terms. With respect to Covered Medical Expenses the certificate consistently refers to a determination of medical necessity "by Metropolitan," not, as plaintiffs now suggest, "by doctors retained by Metroplitan."

Moreover, there is no reason to graft onto Metropolitan's major medical coverage a requirement that only a certain type of professional make the medical necessity determination. The term "medical necessity" with respect to covered medical expenses is a well understood objective standard capable of measurement no matter who makes the decision. An adverse determination is no more palatable because it is made by a doctor than a nurse, nor would it be any more correct in the eyes of the disappointed claimant. And, as noted, no matter who makes the decision, it is challengeable and capable of being fairly determined by an objective standard.

Finally, on this point, it is clear that plaintiffs, in the guise of a fraud claim, are basically alleging a breach of contract.

They maintain that defendant had an obligation to perform its duties under the Plan in a certain way and that it failed to do so. Whether their factual allegations are sustained or not, they have set forth only a claim in contract, not an action in fraud. The only fraud charged relates to a breach of contract and in such case a fraud action cannot be maintained. *(Miller v Volk & Huxley,* 44 AD2d 810; *Giannisis v Maniatis,* 160 AD2d 629, *lv dismissed* 76 NY2d 888.) And, as the IAS Court correctly ruled, damages for emotional distress, which plaintiffs also seek, may not be awarded for breach of a contractual duty. *(Fleming v Allstate Ins. Co.,* 106 AD2d 426, *affd* 66 NY2d 838, *cert denied* 475 US 1096.)

Since there is no merit to the fraud claim, and plaintiffs' claim is for no more than a breach of an insurance contract, a private wrong, there is no basis for an award of punitive damages and thus leave to replead with respect to the same should not be granted. Evidence that Metropolitan denied their claim in an "arbitrary and capricious" manner will not sustain a punitive damage award, any more than evidence of a "willful" breach of an insurance contract, "without justification", will sustain such an award. *(See, Samovar of Russia Jewelry Antique Corp. v Generali,* 102 AD2d 279, 281.)